Morgan E. Pietz (SBN 260629)
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone:   (310) 424-5557
Facsimile :   (310) 546-5301

Attorney for: Multiple Putative John Does[1]

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MALIBU MEDIA, LLC, a California limited liability company,<br><br>                    Plaintiff,<br><br>          v.<br><br>JOHN DOES 1 through 8,<br><br>                    Defendants. | Case Number(s): [Multiple; see below]<br><br>**CORRECTED MEMORANDUM IN SUPPORT OF JOHN DOES' NOTICE OF MOTION AND MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1**<br><br>3:12-cv-1054-LAB-WMC<br><br>Assigned to: Judge Larry Alan Burns<br>Referred to: Magistrate Judge William McCurine, Jr.<br><br>Hearing Date:   November 19, 2012<br>Hearing Time:   11:30 a.m.<br>Hearing Court:  Courtroom 9, 2nd Floor<br>                          Before Judge Burns |

---

[1] An identical copy of this pleading has been filed in each case indicated on this caption.  A corrected list of clients appears on the signature block, below.

MEMORANDUM IN SUPPORT OF
JOHN DOES' MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1

| | |
|---|---|
| MALIBU MEDIA, LLC, a California limited liability company,<br><br>           Plaintiff,<br><br>     v.<br><br>JOHN DOES 1 through 35,<br><br>           Defendants. | 3:12-cv-1135-LAB-DHB<br><br>Assigned to: Judge Larry Alan Burns<br>Referred to: Magistrate Judge David H. Bartick<br><br>Hearing Date:   November 19, 2012<br>Hearing Time:   11:30 a.m.<br>Hearing Court:  Courtroom 9, 2nd Floor<br>                         Before Judge Burns |
| MALIBU MEDIA, LLC, a California limited liability company,<br><br>           Plaintiff,<br><br>     v.<br><br>JOHN DOES 1 through 5,<br><br>           Defendants. | 3:12-cv-1354-LAB-WVG<br><br>Assigned to: Judge Larry Alan Burns<br>Referred to: Magistrate Judge William V. Gallo<br><br>Hearing Date:   November 19, 2012<br>Hearing Time:   11:30 a.m.<br>Hearing Court:  Courtroom 9, 2nd Floor<br>                         Before Judge Burns |
| MALIBU MEDIA, LLC, a California limited liability company,<br><br>           Plaintiff,<br><br>     v.<br><br>JOHN DOES 1 through 27,<br><br>           Defendants. | 3:12-cv-1356-LAB-DHB<br><br>Assigned to: Judge Larry Alan Burns<br>Referred to: Magistrate Judge David H. Bartick<br><br>Hearing Date:   TBD<br><br>Hearing Date:   November 19, 2012<br>Hearing Time:   11:30 a.m.<br>Hearing Court:  Courtroom 9, 2nd Floor<br>                         Before Judge Burns |
| MALIBU MEDIA, LLC, a California limited liability company,<br><br>           Plaintiff,<br><br>     v.<br><br>JOHN DOE et al.,<br><br>           Defendants. | 3:2012-cv-1370-AJB-JMA<br><br>Assigned to: Judge Anthony J. Battaglia<br>Referred to: Magistrate Judge Jan M. Adler<br><br>Hearing Date:   TBD<br><br>[Possible transfer pending to Judge Burns] |

**MEMORANDUM IN SUPPORT OF**
**JOHN DOES' MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................ iii

TABLE OF AUTHORITIES........................................................................... iv

I. INTRODUCTION AND SUMMARY ......................................................... 1

II. BACKGROUND ...................................................................................... 3

    (a)  Malibu Media's Litigation Strategy.................................................. 3

    (b)  Procedural History of Malibu Media Cases in this District................ 6

III. JOINDER IS NOT PERMISSIBLE WHEN, ACCORDING TO PLAINTIFFS' OWN ALLEGATIONS,  JOHN DOES SUPPOSEDLY IN  "SAME SWARM" DOWNLOADED DIFFERENT MOVIES AT DIFFERENT TIMES................................. 8

    (a)  Standard for Joinder........................................................................ 8

    (b)  Defendants Merely "Committed Same Type of Violation in the Same Way," Which is Not Enough to Satisfy Transactional Relatedness Test....................... 8

    (c)  The Majority of Courts Favor Severing All Does Other than Doe No. 1 .......... 10

    (d)  John Does Using BitTorrent Months Apart from One Another Are Not Part of the Same Transaction or Occurrence ................................. 15

    (e)  John Does Who Download Different Movies Are Not Part of the Same Transaction or Occurrence ................................................... 16

    (f)  The Allegations that Defendants Downloaded Different Movies at Different Times Also Means that There Will be Different Questions of Both Law and Fact........................................................................................ 18

    (g)  The Underlying Basis for Plaintiff's "Swarm Joinder" Theory is Not Sound... 18

    (h)  Plaintiffs Mere Allegations of Joint and Several Liability Do Not Make Joinder Permissible and Do Not Prohibit the Court from Severing the Does ................ 20

    (i)  The Does Will be Materially Prejudiced if the Court Denies Severance .......... 20

    (j)  The So-Called "Policy" Reasons the Plaintiff Relies Upon to Justify Joinder Also Miss the Mark................................................................ 21

IV. EVEN IF JOINDER WERE PERMISSIBLE, THE COURT SHOULD STILL EXERCISE ITS DISCRETION AND SEVER THE DOES IN LIGHT OF  PLAINTIFF'S ABUSIVE LITIGATION TACTICS AND  BURDEN ON DOES ................................... 23

V. CONCLUSION.......................................................................................... 25

**MEMORANDUM IN SUPPORT OF**
**JOHN DOES' MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1**

## **TABLE OF AUTHORITIES**

**Cases**

*4:Twenty Media Inc. v. Swarm Sharing Hash Files*, 2012 U.S. Dist. LEXIS 123163
(W.D. La. Aug. 17, 2012) ……………………………………………………..14

*AF Holdings LLC v. Does 1-1,058*, 12-cv-0048-BAH, Dkt. 46, 8/6/12…………………13
16

*AF Holdings LLC v. Does 1-97*, 2011 U.S. Dist. LEXIS 78636, *4
(N.D. Cal. July 20, 2011) ……………………………………………………9

*Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521-522
(5th Cir. 2010) ……………………………………………………passim

*Arista Records, LLC v. Does 1-11*, 2008 U.S. Dist. LEXIS 90183, at *16,17
(N.D. Ohio 2008) ……………………………………………………10

*Bautista v. Los Angeles County*, 216 F.3d 837, 842-843 (9th Cir. 2000) …………..8, 10

*Boy Racer Inc. v. Does 1-60*, 11-cv-01738-SI, 2011, 2011 U.S. Dist. LEXIS 92994, at *4
(N.D. Cal. Aug. 19, 2011) ……………………………………………………2, 9

*Call of the Wild Movie, LLC v. Does 1-1,062*, D.D.C. Case No. CV-10-455,
Dkt. No. 40, 3/22/2011……...………………………………………passim

*Diabolic Video Prods. v. Does 1-2099*, 10 Civ. 5865, 2011 U.S. Dist. LEXIS 58351
(N.D. Cal. May 31, 2011)………...…………………………………...2, 9

*Digital Sins, Inc. v. John Does 1-245*, S.D.N.Y. Case No. 11-cv-8170,
Dkt. No. 18, 5/15/12 ("*Digital Sins*") ……………………………………passim

*DigiProtect USA Corp. v. Doe*, 2011 U.S. Dist. LEXIS 109464, 8-9 (S.D.N.Y. Sept. 26,
2011) ……………………………………………………16

*Discount Video Center, Inc. v. Does 1-29*, D. Mass. Case No. 12-cv-10805, Dkt. No. 40,
8/24/12, p. 3……………………………………………………5

**MEMORANDUM IN SUPPORT OF**
**JOHN DOES' MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1**

*Donkeyball Movie, LLC v. Does 1-171*, 810 F. Supp. 2d 20, 24 (D.D.C. May 12, 2011)

(Howell, J.) ………………………………………………………………12

*First Time Videos, LLC v. Does 1-76,* 2011 WL 3586245, N.D. Ill. Case No. 11-cv-3831,

8/16/11…………………………………………………………………………11, 12

*Hard Drive Productions, Inc. v. Does 1-188*, 809 F. Supp. 2d 1150

(N.D. Cal. August 23, 2011) Case No. 11-cv-01566, Dkt. No. 18

("*Hard Drive Prods.*") …………..……………..………………..……………..passim

*Hubbard v. Hougland*, 2010 U.S. Dist. LEXIS 46184 (E.D. Cal. Apr. 5, 2010) …….8, 19

*In re: BitTorrent Adult Film Copyright Infringement Cases,*

2012 U.S. Dist. LEXIS 61447 (E.D.N.Y. May 1, 2012)

Case No. CV-11-3995-DRH-GRB, Dkt. No. 39

("*In re: Adult Film Cases*")…...……………………………….…………passim

*K-Beech, Inc. v. Does 1-85*, 2011 U.S. Dist. LEXIS 124581

(E.D. Va. Oct. 5, 2011) …………………………………………………...9

*Liberty Media Holdings,* 2012 WL 628309………………………………………..20

*Liberty Media Holdings, LLC*, 2011 WL 5190106, at *3

(S.D. Fla. Nov. 1, 2011) …………………………………………………...16

*Liberty Media Holdings, LLC v. BitTorrent Swarm,* 2011 WL 5190048, at *2–4 (S.D. Fla.

Nov. 1 2011) …………………………………………………………16

*Malibu Media v. John Does 1-10*, C.D. Cal. Case No. 12-cv-3623-ODW-PJW,

Dkt. No. 7, 6/27/12………………………………………………….......passim

*Malibu Media, LLC v. John Does 1-11*, 2012 U.S. Dist. LEXIS 94648

(D.D.C. July 10, 2012) …………………………………………....…………………4

*Malibu Media, LLC v. Doe*, 2012 U.S. Dist. LEXIS 94705

(E.D. Cal. July 6, 2012) …………………………………………………14

*Malibu Media, LLC* v. Doe, 2012 U.S. Dist. LEXIS 96333

(E.D. Cal. July 10, 2012) …………………………………………………...14

*Malibu Media, LLC v. Doe*, 2012 U.S. Dist. LEXIS 96351

**MEMORANDUM IN SUPPORT OF**
**JOHN DOES' MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1**

(E.D. Cal. July 10, 2012) …………………………………………………...14

*Malibu Media, LLC v. Does*, 2012 U.S. Dist. LEXIS 114216, 13-14 (D. Colo.

August 14, 2012)…………………………………………………………..14

*Malibu Media, LLC v. Does*, 2012 U.S. Dist. LEXIS 114236, 13-14 (D. Colo.

August 14, 2012)…………………………………………………………..14

*Next Phase Distrib., Inc. v. Does 1-27*, 2012 U.S. Dist. LEXIS 107648, 11-12

(S.D.N.Y. July 31, 2012) ……………………………………………….2, 25

*Pacific Century Int'l., Ltd. v. John Does 1-37*, – F. Supp. 2d –, 2012 WL 1072312

(N.D. Ill. Mar. 30, 2012) Case No. 12-cv-1057, Dkt. No. 23……………...2, 10, 11

*Patrick Collins, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 75986

(E.D.N.Y. May 31, 2012) ………………………………………………..14

*Patrick Collins, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 96350

(E.D. Cal. July 10, 2012) ………………………………………………..14

*Patrick Collins, Inc. v. Does 1-58*, U.S. Dist. LEXIS 120235, *2-7

(E.D. Va. Oct. 5, 2011) …………………………………………………..9

*Patrick Collins, Inc. v. John Does 1-21,* 2012 WL 1190840, at *4-5 (Randon, J.) ……19

*Patrick Collins, Inc. v. Does 1–3757*, 2011 U.S. Dist. LEXIS 128029, at *6–7

(N.D.Cal. Nov. 4, 2011) …………………………………………………23

*Raw Films, Inc. v. Does 1-32,* 2011 WL 6840590, at *2 (N.D. Ga. Dec. 29, 2011) …9, 16

*SBO Pictures, Inc. v. Does 1-20*, No. 12 Civ. 3925 (SAS), 2012 WL 2304253, (S.D.N.Y.

June 18, 2012) at *2…………………………………………………….25

*W. Coast Prods. v. Swarm Sharing Hash Files*, 2012 U.S. Dist. LEXIS 123170

(W.D. La. Aug. 17, 2012) ………………………………………………..14

*Zero Tolerance Entm't, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 78834

(S.D.N.Y. June 5, 2012)…………………………………………………..14

**MEMORANDUM IN SUPPORT OF**
**JOHN DOES' MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1**

**Rules**

Federal Rule of Civil Procedure 20(a)(2) …………………………………………………..8, 11

Federal Rule of Civil Procedure 21 ……………………………………………….. 11

Civil L.R. 7.1(i)(2) …………………………………………………………………..8

**Secondary Source**

4-20 Moore's Federal Practice - Civil § 20.02…………………………………………9

**MEMORANDUM IN SUPPORT OF**
**JOHN DOES' MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1**

# I.  INTRODUCTION AND SUMMARY

Malibu Media, LLC ("**Malibu Media**")'s cases in this District are part of the "nationwide blizzard of civil actions brought by purveyors of pornographic films alleging copyright infringement by individuals utilizing a computer protocol known as BitTorrent." *In re: BitTorrent Adult Film Copyright Infringement Cases,* 2012 U.S. Dist. LEXIS 61447 (E.D.N.Y. May 1, 2012) Case No. CV-11-3995-DRH-GRB, Dkt. No. 39 ("*In re: Adult Film Cases*") (comprehensive order and report of Magistrate Judge Gary Brown ordering severance of Does in cases filed by Malibu Media, among others).  Courts across the country are growing increasingly skeptical of these cases; Judge Wright of the Central District of California, ***while presiding over a Malibu Media case***, recently described this kind of litigation as "***essentially an extortion scheme***." *Malibu Media v. John Does 1-10*, C.D. Cal. Case No. 12-cv-3623-ODW-PJW, docket no. 7, 6/27/12, p. 6 (emphasis added). Exactly how this "extortion scheme" works is detailed in the next section.

The foundation for this "extortion scheme" though is a perversion of the permissive joinder rule.  Simply put, Rule 20 was never intended to be a weapon that allows copyright owners to file what amount to reverse class actions against multiple defendants accused of file sharing.  As many courts have held—and increasingly so—alleging that Does downloaded pieces of the same movies ***months apart from one another*** does not mean the Does are part of the same "transaction or occurrence" for the purposes of Rule 20. Here, "defendants 'merely commit[ed] the same type of violation in the same way,' [which] does not satisfy the test for permissive joinder pursuant to Rule 20." *Digital Sins, Inc. v. John Does 1-245*, S.D.N.Y. Case No. 11-cv-8170, Dkt. No. 18, 5/15/12 at p. 2–3.

Further, here, as detailed below, the plaintiff actually alleges the Does downloaded ***different movies,*** at different times.  Even if the so-called "swarm joinder" theory were legally sound (a dubious proposition which will soon be addressed by the D.C. Circuit),[2]

---

[2] Hon. Judge Beryl Howell, who, prior to 2010, was a lobbyist for the RIAA (the RIAA pioneered mass infringement actions against file sharers during its litigation campaign between 2003–2008), recently certified the joinder issue for interlocutory appeal at the request of many of the nations major ISPs, which had asked Judge Howell to reconsider her views on these cases.

**MEMORANDUM IN SUPPORT OF**
**JOHN DOES' MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1**

surely the facts here would take the concept too far afield. Is every BitTorrent download of a copyright owner's movie "transactionally related" to every other BitTorrent download of that movie?  Because that would seem to be the logical extension of the joinder standard that Malibu Media is advocating.

Malibu Media attempts to justify joinder by relying on several cases where Courts have deferred consideration of joinder until after service is completed, and even a few decisions—most notably the opinions of Judge Beryl Howell of the D.C. District—where courts have actually approved plaintiff's theory of "swarm joinder."  For every opinion going the plaintiff's way though, there are two or three siding with the Does, wherein Courts have denied early discovery as to and/or severed all Does other than Doe No. 1. Whereas most of the decisions plaintiff cites date back to 2011, the more recent trend— what one Judge calls a "stiffening judicial headwind"[3]—and, what the undersigned believes can fairly be styled a majority position, has been to sever Does in cases like these.

No Circuit Court of Appeals has yet ruled on the propriety of the so-called "swarm joinder" theory.  However, as these lawsuits proliferate around the country, increasingly, at an early stage of litigation,[4] courts are requiring mass infringement plaintiffs to "offer[] [] evidence justifying joinder of the Doe Defendants."  *E.g. Malibu Media v. John Does 1-10*, C.D. Cal. Case No. 12-cv-3623-ODW-PJW, docket no. 7, 6/27/12, p. 5.

Finally, even if the Court finds that joinder is *permissible*, given the general track record of this plaintiff and its counsel, and their specific conduct in *these* actions before this Court, the Court should still exercise its discretion and order severance. *See Acevedo v.*

---

[3] *Pacific Century Int'l., Ltd. v. John Does 1-37*, – F. Supp. 2d –, 2012 WL 1072312  (N.D. Ill. Mar. 30, 2012) Case No. 12-cv-1057, Dkt. No. 23, p. 7."  *Hard Drive. Prods., surpa*, fn. 10.

[4] Generally, deferring consideration of severance until after service means deferring consideration to a day that will never come, which only encourages plaintiffs to keep mis-joining Does.  Thus, according to Judge Lloyd of the Northern District of California, "simultaneous consideration of the application for early discovery and joinder has become the norm for courts in this district faced with similar cases. See, e.g., Hard Drive Prods. v. Doe, 2011 U.S. Dist. LEXIS 89858 (N.D. Cal. Aug. 12, 2011); Boy Racer v. Does, 2011 U.S. Dist. LEXIS 86746 (N.D. Cal. Aug. 5, 2011); Diabolic Video Prods. v. Does 1-2099, 2011 U.S. Dist. LEXIS 58351 (N.D. Cal. May 31, 2011).

**MEMORANDUM IN SUPPORT OF**
**JOHN DOES' MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1**

1   *Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521-522 (5th Cir. 2010); *Next Phase*

2   *Distrib., Inc. v. Does 1-27*, 2012 U.S. Dist. LEXIS 107648, 11-12 (S.D.N.Y. July 31, 2012)

3   (addressing splint in authority, but severing Does as a matter of the Court's discretion for

4   the reasons set forth in *In re: Adult Film Cases*).

5   ## II.  BACKGROUND

6   **(a)     Malibu Media's Litigation Strategy**

7          Plaintiff Malibu Media, LLC, which owns the rights to various pornographic

8   movies, is a serial filer of copyright infringement lawsuits, and a notorious solicitor of

9   unjust "settlements," which border on extortion.  In these lawsuits, Malibu Media alleges

10  that unknown individuals used certain I.P. addresses to access the Internet, and then used

11  an application called BitTorrent to illegally download Malibu Media's pornographic

12  movies.[5]  After filing a complaint, Malibu Media generally seeks leave of court to conduct

13  early discovery and issue subpoenas to Internet Service Providers, which demand that the

14  ISPs disclose the account details of the I.P. addresses used to download plaintiff's movies.

15  In order to obtain Court authorization to issue subpoenas—the single key legal issue

16  driving Malibu Media's business model—Malibu Media generally makes several material

17  misrepresentations to the Court.  Notably, here Malibu Media claimed, incorrectly, in its

18  original early discovery requests that courts are "unanimous" in granting early discovery in

19  cases like this and represents that "the discovery sought will facilitate identification of the

20  defendants and service of process."  Since Malibu Media's early discovery requests are

21  usually ***unopposed***, many Courts, including Courts of this District, have allowed Malibu

22  Media to issue subpoenas to the ISPs.

---

24  [5] The very first step in Malibu Media's business model is that it hires a "technical expert" which

25  "logs" the I.P. addresses that are used to download plaintiff's content on BitTorrent.  In computer
    terminology, plaintiff appears to be operating what is called a "honeypot," which is essentially a

26  baited trap. Plaintiff's pornographic movies are the bait, and the trap is these lawsuits.  Rather than
    try and remove its content from BitTorrent by filing DMCA takedown notices, plaintiff prefers

27  instead to actively participate in—and possibly facilitate—the infringing downloads of which it

28  now complains.  In other words, plaintiff appears to prefer to collect a list of potential people to
    sue rather than take other simple affirmative steps to remove its content from BitTorrent.

**MEMORANDUM IN SUPPORT OF**
**JOHN DOES' MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1**

However, really, this is all a sham.  Malibu Media pretends that it is interested in "identifying" and "serving" actual defendants.  But that is simply not true.  As has been shown district by district, in dozens if not hundreds of cases, what plaintiff is really interested in is using this Court's subpoena power, and the stigma associated with pornography, to leverage improper "settlements" from Internet subscribers who may ***or may not*** have actually downloaded plaintiff's movies.

One key problem with this scheme—which was not addressed in plaintiff's moving papers seeking authorization to issue subpoenas—is that many of the subscribers whose information will be turned over by the ISPs are not actually the people who downloaded plaintiff's pornographic movies.  The unfortunate people sucked into this morass are, by definition, always the people who happen to pay the Internet/cable bill.  In an age when most homes have routers and wireless networks and multiple computers share a single I.P. address, the actual infringer could be a teenage son with a laptop, an invitee, a hacker, or any neighbor using an unencrypted wireless signal.  Thus, "there is a reasonable likelihood that the [the Does] may have had no involvement in the alleged illegal downloading that has been linked to his or her IP address."  *Malibu Media, LLC v. John Does 1-11*, 2012 U.S. Dist. LEXIS 94648 (D.D.C. July 10, 2012).  Indeed, as one judge observed in another of these cases, "***Plaintiff's counsel estimated that 30% of the names turned over to the ISP's are not those of the individuals who actually downloaded or shared copyrighted material.***"  *Digital Sins, Inc. v. Does 1-176,* -- F.R.D. --, 2012 WL 263491, at *3 (S.D.N.Y. Jan. 30, 2012).

This inconvenient fact, however, generally does not stop the plaintiff from demanding that a subscriber (i.e., whomever happens to pay the bill) should fork over several thousand dollars to settle the case, upon threat of being publicly accused of illegally downloading explicit pornography. That threat is essentially the heart of this business: pay up, or else plaintiff will publicly shame you as someone who watches pornography.  Many subscribers, even if they are innocent, simply pay the ransom rather than face the expense, uncertainty and potential embarrassment of defending themselves.

**MEMORANDUM IN SUPPORT OF**
**JOHN DOES' MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1**

Plaintiff files hundreds of these cases nationwide, against thousands of Does, knowing full well that none of the Does will ever be served, or even named, except perhaps for a token few, to make a show of it.  A look at plaintiff's past track record—0 out of 633 Does formally served, in cases over 120 days old, as of July—belies plaintiff's representation, which it makes repeatedly, to courts around the country, and which it reiterated again here, "that the discovery sought will facilitate identification of the defendants and service of process." Kushner Dec'l. i/s/o Early Discovery Request at ¶ 4. While the subpoenas requested by plaintiff in these cases might *theoretically* "facilitate" identification of and service upon actual defendants, in *actuality*, based on plaintiff's past track record in its cases over 120 days old as of July, the subpoenas *never* do.  Dec'l. of Morgan E. Pietz, ¶¶ 22–24.[6]

However, the issuance of subpoenas *almost always* results in the consummation of "settlements," many of which are paid by people who did not actually download plaintiff's movies, but do not wish to incur the expense, uncertainty and potential embarrassment of defending themselves.  As Judge Wright, who was previously assigned one of Malibu Media cases in Central District noted, "The federal courts are not cogs in a plaintiff's copyright-enforcement business model. ***The Court will not idly watch what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to trial***." *Malibu Media v. John Does 1-10*, C.D. Cal. Case No. 12-cv-3623-ODW-PJW, docket no. 7, 6/27/12, p. 6.  (Emphasis added).

Some plaintiff's lawyers in these cases have taken a step in the right direction by admitting that actually naming and serving someone with a complaint in these cases, based on nothing more than the subscriber information obtained from the ISP, would likely

---

[6] In reply papers filed in the Central District of California in September, Malibu Media points to the fact that it has apparently *named* individual defendants in 18 cases nationwide, out of a total of nearly 300 cases filed against nearly 5,000 Does, as conclusive proof that it is serious about "litigating" these cases.  A closer look at the docket in each of these 18 cases, however, reveals that Malibu Media has actually *served* precisely 4 defendants, in 2 cases, for a national service average of approximately 0.04%.  *See* Dec'l. of Morgan E. Pietz, ¶¶ 25–26, Appendix 2.

**MEMORANDUM IN SUPPORT OF**
**JOHN DOES' MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1**

violate Rule 11. *E.g., Discount Video Center, Inc. v. Does 1-29*, D. Mass. Case No. 12-cv-10805, Dkt. No. 40, 8/24/12, p. 3 (Doe Mtn. to dismiss). However, plaintiff's counsel here does not seem prepared to make such a concession. Instead, per plaintiff's renewed motion papers filed recently in the Central District of California, plaintiff seems ready to treat ISP subscribers as actual defendants. Plaintiff states in its papers that, "Plaintiff attached as Exhibit A to each Complaint a list of IP address, the date and time of the infringing act, and corresponding ISPs. Plaintiff has thereby demonstrated that Defendants can be corresponded to their allegedly infringing acts." P's Renewed Motion, p. 4. There is a step missing here; plaintiff simply assumes, incorrectly, that whomever pays the bill for the Internet connection "can be corresponded" to the Defendant that committed the allegedly infringing acts. Maybe yes, maybe no; but plaintiff has no plan to get from A to C. Further, as far as the undersigned is aware, when plaintiff's professional "settlement negotiators" have called up ISP subscribers or their counsel, threatened to "name" them, and pressured them to settle over the phone, there has never been any mention of Rule 11 safeguards.

Finally, if plaintiff's past history is any guide, after requesting as many extensions as it can get of the Rule 4(m) service deadline—to allow its "settlement negotiators" to work the phones for as long as possible—Malibu Media will simply dismiss the cases, or most if not all Does, without prejudice. Dec'l. of Morgan E. Pietz, ¶ 24.

**(b)     Procedural History of Malibu Media Cases in this District**

One of Malibu Media's tactics in its nationwide settlement business—or, at least, one of the tactics employed by plaintiff's counsel here, Ms. Leemore Kushner—is to make a policy of not filing Notices of Related Cases. In the Central District of California, so far this year, Ms. Kushner has filed over 30 lawsuits on behalf of Malibu Media and zero Notices of Related Cases. Similarly, Ms. Kushner did not initially file any Notices of Related Cases in the Eastern District of California. So, too, with respect to cases Ms. Kushner has filed on behalf of Patrick Collins, Inc., another plaintiff she represents in nearly identical lawsuits. Ms. Kushner's history in this District is similar: she or her

**MEMORANDUM IN SUPPORT OF**
**JOHN DOES' MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1**

predecessor has filed 18 cases in this District so far this year, and never did bother to file a Notice of Related Cases. As a result of this tactic, here, as in the Eastern District of California, and Central District of California, multiple Judges were initially assigned to cases that involve what is essentially the same form complaint, same "technical expert," same claims, and, often times, the exact same copyrighted movies.[7]

By making it a policy never to file Notices of Related Cases, plaintiff's counsel generally tries to fly under the radar, and hedge her bets, by parceling cases out to different Judges. Given the split in authority, lack of controlling Circuit precedent, and the differing levels of familiarity among Judges with both BitTorrent and these pornographic mass infringement cases, which are a relatively new phenomenon, the advantages to spreading the cases around are obvious. If plaintiff files a Notice of Related Cases properly at the outset, plaintiff risks having a single Judge appreciate the full scope of Malibu Media's abusive activities in the District, and having a single Judge curtail these activities.

Three of the Moving Parties have filed *Ex Parte* Applications for Leave to File a Motion for Reconsideration of the Court's Order Granting Early Discovery. The original rationale for filing these applications was that the first clients engaged by this firm were being sued in cases assigned to Judge Larry Burns. Judge Burns has a standing order requiring parties seeking reconsideration to first file an *ex parte* application seeking leave to file a longer motion for reconsideration. Magistrate Judge Bartick, in 12-cv-1135, who entered the order authorizing early discovery in that case, has denied one of these applications. Magistrate Judge Gallo, to whom the other two applications for leave to file a motion for reconsideration were noticed, has yet to respond.

---

[7] After forcing the issue with Ms. Kushner in three other districts with mixed success in prompting her to act, the undersigned simply stepped in and filed a Notice of Related Cases in the cases pending here, on 8/16/12, as allowed under this Districts Local Rule on Notices of Related Cases. However, one case was inadvertently left off the original Notice of Related Cases, resulting in the filing of an Amended Notice of Related Cases by the undersigned on 8/31/12.

**MEMORANDUM IN SUPPORT OF**
**JOHN DOES' MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1**

### III.  JOINDER IS NOT PERMISSIBLE WHEN, ACCORDING TO PLAINTIFFS' OWN ALLEGATIONS, JOHN DOES SUPPOSEDLY IN "SAME SWARM" DOWNLOADED DIFFERENT MOVIES AT DIFFERENT TIMES

**(a)     Standard for Joinder**

Federal Rule 20(a)(2) provides that defendants "may be joined" if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. Proc. 20(a)(2)(emphasis added).  In discussing Ninth Circuit law, one court has explained that "The 'same transaction' requirement of Rule 20 refers to 'similarity in the factual background of a claim; claims that arise out of a systematic pattern of events' ***and*** have a '***very definite*** logical relationship.'" *Hubbard v. Hougland*, 2010 U.S. Dist. LEXIS 46184 (E.D. Cal. Apr. 5, 2010) (emphasis added); *citing Bautista v. Los Angeles County*, 216 F.3d 837, 842-843 (9th Cir. 2000).

However, "***even if the test is satisfied, district courts have the discretion to refuse joinder*** in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness."  *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521-522 (5th Cir. 2010) (internal citations omitted); *accord* 4-20 Moore's Federal Practice - Civil § 20.02.

**(b)     Defendants Merely "Committed Same Type of Violation in the Same Way," Which is Not Enough to Satisfy Transactional Relatedness Test**

Judge McMahon of the Southern District of New York recently addressed plaintiff's swarm joinder theory in a case quite similar to this one, as follows,

> "There is no need for this Court to write another lengthy opinion discussing why plaintiff's theory is wrong.  Rather, I adopt and expressly incorporate into this memorandum order the reasoning of Judge Gibney in *K-Beech* [*Inc. v. John Does 1-85,* No. 3:11-cv468, 2011 U.S. Dist. LEXIS

124581, at *2-3 (E.D. [Va.] Oct. 5, 2011)][8]; Magistrate Judge Spero of the Northern District of California in *Hard Drive Productions, Inc. v. Does 1-188*, No. C-11-01566, 860 F. Supp. 2d 1150 (N.D. Cal. August 23, 2011)[9]; several other courts in the Northern District of California, including *Diabolic Video Productions, Inc. v. Does 1-2099*, 10 Civ. 5865, 2011 U.S. Dist. LEXIS 58351, at * 10-11 (N.D. Cal. May 31, 2011); and most especially the comprehensive Report and Recommendation of the Hon. Gary R. Brown, U.S.M.J., that was filed in our sister court, the Eastern District of New York, in *In re: BitTorrent Adult Film Copyright Infringement Cases,* No. 11-cv-3995, 2012 U.S. Dist. LEXIS 61447 (E.D.N.Y. May 1, 2012).[10]

   All of the courts on which this Court relies, and whose reasoning I find persuasive, have concluded that where, as here, the plaintiff does no more than assert defendants 'merely commit[ed] the same type of violation in the same way,' it does not satisfy the test for permissive joinder pursuant to Rule 20. . . .what we have here is 245 separate and discrete transactions in which 245 individuals used the same method to access a file via the Internet—no concerted action whatever, and no series of related occurrences—at least, not related in any way except the method that was allegedly used to violate the law." *Digital Sins, Inc., supra,* at p. 2–3.

---

[8] (finding "the mere allegation that defendants used [BitTorrent] to copy and reproduce the Work … on different days and times, ***over a three month period***" insufficient to support joinder);

[9] (collecting cases)

[10] *See also Boy Racer Inc. v. Does 1-60*, 11-cv-01738-SI, 2011, 2011 U.S. Dist. LEXIS 92994, at *4 (N.D. Cal. Aug. 19, 2011) (finding misjoinder because "Plaintiff [did] not plead facts showing that any particular defendant illegally shared plaintiff's work with any other particular defendant"); *AF Holdings LLC v. Does 1-97*, 2011 U.S. Dist. LEXIS 78636, *4 (N.D. Cal. July 20, 2011) (holding that even though BitTorrent protocols differ from previous peer-to-peer platforms, joinder is improper); *Raw Films, Ltd. v. Does 1-32*, 2011 U.S. Dist. LEXIS 114996, *2-7 (E.D. Va. Oct. 5, 2011); *Patrick Collins, Inc. v. Does 1-58*, U.S. Dist. LEXIS 120235, *2-7 (E.D. Va. Oct. 5, 2011); *Hard Drive Productions, Inc. v. Does 1-30*, 2011 U.S. Dist. LEXIS 119333, *6-10 (E.D. Va. Oct. 17, 2011).

**MEMORANDUM IN SUPPORT OF**
**JOHN DOES' MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1**

In short, across the country, there is a "stiffening judicial headwind" that is severing John Does from mass infringement pornography lawsuits such as this one like leaves on fall day. *See Pacific Century Int'l., Ltd. v. John Does 1-37*, – F. Supp. 2d –, 2012 WL 1072312 (N.D. Ill. Mar. 30, 2012) Case No. 12-cv-1057, Dkt. No. 23 at p. 7.

Further, plaintiff's strategy of never/seldom naming or serving any defendants effectively precludes consideration of joinder at a later stage of this case.  Deferring a ruling on joinder, "encourages Plaintiff[] … to join (or misjoin) as many doe defendants as possible. . .Postponing the issue of joinder to a day that in all likelihood will never come only serves to aid Plaintiffs' attempt to avoid filing fees. While Plaintiffs are certainly entitled to vindicate their rights, they must play by the Federal Rules in doing so." *See Arista Records, LLC v. Does 1-11*, 2008 U.S. Dist. LEXIS 90183, at *16,17 (N.D. Ohio 2008) (citation omitted).

As to those Does who are severed, they should be "dropped,"[11] which practically means that the cases against them should be dismissed *without* prejudice and the plaintiffs permitted to refile a new, individual complaint against each severed Doe, after paying the filing fee.  Further, as a practical matter, since these Does are being dismissed without prejudice, the subpoenas seeking their identifying information should be quashed.  *See* Fed. R. Civ. Proc. 21; *In re: Adult Film Cases*, *supra*, p. 23–25; *see also Digital Sins, Inc.*, *supra*, at 2–3, p. 7 ("Because I have severed and dismissed all of the claims against the defendants, I hereby, *sua sponte*, quash any subpoena that may be outstanding to any Internet service provider seeking information about the identity of any John Doe other than John Doe 1).

**(c)     The Majority of Courts Favor Severing All Does Other than Doe No. 1**

For every 2011 case going plaintiff's way on swarm joinder, there are two 2012 cases siding with the Does.  Further, a close look at the authority upon which Malibu

---

[11] Undoubtedly, Fed. R. Civ. Proc. 21 prohibits dismissal of an *action* as the remedy for misjoinder.  But, in practical effect, dropping given Does from an action, while still keeping Doe No. 1 in the case, results in a dismissal without prejudice as to the severed Does.  Many cases have adopted this approach. *E.g.*, *In re: Adult Film Cases, supra.*

**MEMORANDUM IN SUPPORT OF**
**JOHN DOES' MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1**

Media relies only further reinforces the need for the Court to decide this issue now and sever the Does.

In arguing that all Does other than Doe No. 1 should not be dismissed for mis-joinder, plaintiff cites to *First Time Videos, LLC v. Does 1-76,* 2011 WL 3586245, N.D. Ill. Case No. 11-cv-3831, 8/16/11, for the proposition that "the overwhelming majority of courts have denied as premature motions to sever prior to discovery." ***This observation may have been accurate in August of 2011, but it is no longer true today***.  Notably, another court in the Northern District of Illinois observed on March 30, 2012 that,

> "the Doe defendants contend that joinder of the defendants is improper under Federal Rule of Civil Procedure 20(a)(2). Some courts have rejected those arguments [footnote cites 3 cases, one of which is *First Time Videos, LLC v. Does 1-76*], but ***others have increasingly accepted them and severed the defendants or quashed the subpoenas*** [footnote cites 5 cases].
>
> ***In the face of this stiffening judicial headwind***, the plaintiffs here have adopted a new tactic. . . ." *Pacific Century Int'l., Ltd. v. John Does 1-37,* – F. Supp. 2d –, 2012 WL 1072312  (N.D. Ill. Mar. 30, 2012) Case No. 12-cv-1057, Dkt. No. 23, p. 7 (emphasis added)

Further, a review of the docket for *First Time Videos, LLC v. Does 1-76* confirms the usual pattern: after never serving anyone, plaintiffs dismissed the case without prejudice in February of 2012.

Recently, in the Central District of California, counsel for the undersigned and counsel for plaintiff's briefed the joinder issue in detail.  *See, e.g., Malibu Media v. Does 1-10,* C.D. Cal. Case No. 12-cv-3614, at Dkt. Nos. 30, 31, 32, 33.  A careful review of plaintiff's renewed motion for early discovery filed in the Central District of California shows that it is heavy on opinions and orders decided in 2011.  By the undersigned's count, of the 21 BitTorrent mass infringement opinions and orders cited by plaintiff as supporting

**MEMORANDUM IN SUPPORT OF**
**JOHN DOES' MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1**

joinder in its renewed motion for early discovery, 15 opinions and orders were entered in 2011.   Of these 15 opinions and orders from 2011, seven were issued by courts in the D.C. District.  The remainder of these 15 orders and opinions from 2011, generally rely heavily on the analysis of Judge Beryl Howell, of the D.C. District, who penned the leading case for the so called "swarm joinder" theory, in *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 332, D.D.C. Case No. CV-10-455, Dkt. No. 40, 3/22/2011 (Howell, J.).

The same is also true of the 2012 opinions and orders plaintiff relies upon: in essence, when courts of various districts have focused on Judge Howell's analysis, the result has been a line of cases in favor of plaintiff's swarm joinder theory.  Each of the six 2012 cases plaintiff cites in support of joinder all rely primarily on citations to *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 332, D.D.C. Case No. CV-10-455, Dkt. No. 40, 3/22/2011 (Howell, J.); or to its follow-on decision, *Donkeyball Movie, LLC v. Does 1-171*, 810 F. Supp. 2d 20, 24 (D.D.C. May 12, 2011) (Howell, J.).   In short, Judge Howell's orders from the D.C. District are the main legal foundation validating plaintiff's swarm joinder theory.

According to published reports, prior to being elevated the Federal Judiciary in 2010, Judge Howell was a lobbyist for the RIAA.  The RIAA, as a plaintiff, pioneered this kind of mass copyright infringement lawsuit, filing many complaints against Does for file sharing between 2005 and 2008, when the RIAA abandoned its litigation campaign.[12]  Recently, a collection of the nations largest ISPs intervened to ask Judge Howell to revise her position in *Call of the Wild* and its progeny, arguing, among other things, that these lawsuits have become an immense burden on the ISPs and the courts.  Judge Howell issued a lengthy order denying the relief requested by the ISPs, and taking the ISPs to task for backsliding on promises made during the negotiation of the Digital Millennium Copyright Act.  According to some reports, Judge Howell helped to shape the DMCA prior to

---

[12] http://www.wired.com/threatlevel/2010/05/riaa-bump/;
https://www.eff.org/wp/riaa-v-people-five-years-later;
http://www.techdirt.com/articles/20110329/04174413675/judge-who-said-lumping-together-unrelated-copyright-cases-is-fine-is-former-riaa-lobbyist.shtml

**MEMORANDUM IN SUPPORT OF**
**JOHN DOES' MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1**

becoming a Judge.  However, Judge Howell also agreed to the ISPs' request to certify the issue of the propriety of swarm joinder for interlocutory appeal to the D.C. Circuit, which is likely to be the first Circuit Court of Appeals to address the these issues.  *AF Holdings LLC v. Does 1-1,058*, 12-cv-0048-BAH, Dkt. 46, 8/6/12.

Apart from a few Courts that have sided with Judge Howell this year, the clear trend in 2012 has been that more and more Courts are finding joinder to be improper in these mass infringement cases.  Comparing the Lexis Shepard's reports for *Call of the Wild*, *supra*, (Howell, J.) (decided 3/22/2011) and *Hard Drive Prods., supra*, (decided 8/23/2011) (a leading case on swarm joinder, going the other way, and applying Ninth Circuit law in denying early discovery as to and severing all Does other than Doe No. 1) shows how the tide is turning.  According to Lexis, *Call of the Wild* was "followed" 4 times in 2011 and 4 times in 2012.  By contrast, *Hard Drive Prods,* which found for the Does, was "followed" 11 times in 2011 and 16 times so far in 2012.  Similarly, *Call of the Wild* was "criticized" or "distinguished" 4 times in 2011 and 14 times in 2012, while *Hard Drive Prods*. was "criticized" or "distinguished" only 1 time in 2011, and 8 times in 2012. While certainly not an exact measure, the undersigned, who has reviewed many of the relevant cases on these issues, believes it is fair to say that now, in 2012, Courts that endorse Judge Howell's swarm joinder theory are in the minority.

Since May of 2012, an overwhelming number of Courts have specifically endorsed the watershed order and recommendation of Magistrate Judge Gary Brown in *In re: Adult Film Cases,* wherein Judge Brown severed the 37 Does in that case*. E.g., Digital Sins, Inc.*, *supra*, at p. 2–3, 8 (reviewing prior cases and explicitly adopting "most especially the comprehensive Report and Recommendation of the Hon. Gary R. Brown," and ordering that, in the future, "***any effort to take discovery prior to service must follow the sensible protocol adopted by Magistrate Judge Brown*** in *In re: []Adult Film [] Cases.*"); *see also, e.g., Patrick Collins, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 75986, 2-3 (E.D.N.Y. May 31, 2012) (citing *In re: Adult Film Cases* and finding "that ***for the reasons set forth in the well-reasoned decision of Magistrate Judge Gary R. Brown*** dated May 1, 2012, plaintiff

**MEMORANDUM IN SUPPORT OF**
**JOHN DOES' MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1**

has not satisfied the requirement of establishing that defendants participated in the same "transaction" or "occurrence" within the meaning of Fed. R. Civ. P. 20."); *Zero Tolerance Entm't, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 78834 (S.D.N.Y. June 5, 2012) (severing all Does other than Doe No. 1 and ***explicitly "adopt[ing] the procedures of Judge McMahon and Magistrate Judge Brown***"); *Malibu Media, LLC v. Doe*, 2012 U.S. Dist. LEXIS 96351 (E.D. Cal. July 10, 2012) (citing *In re: Adult Film Cases* and denying early discovery/severing all Does other than Doe No. 1); *Patrick Collins, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 96350 (E.D. Cal. July 10, 2012) (same); *Malibu Media, LLC* v. Doe, 2012 U.S. Dist. LEXIS 96333 (E.D. Cal. July 10, 2012) (same); *Malibu Media, LLC v. Doe*, 2012 U.S. Dist. LEXIS 94705 (E.D. Cal. July 6, 2012) (same); *W. Coast Prods. v. Swarm Sharing Hash Files*, 2012 U.S. Dist. LEXIS 123170 (W.D. La. Aug. 17, 2012) (same); *4:Twenty Media Inc. v. Swarm Sharing Hash Files*, 2012 U.S. Dist. LEXIS 123163 (W.D. La. Aug. 17, 2012) (same); *Malibu Media, LLC v. Does*, 2012 U.S. Dist. LEXIS 114236, 13-14 (D. Colo. Aug. 14, 2012) (same);[13] *Malibu Media, LLC v. Doe*, 2012 U.S. Dist. LEXIS 114216 (D. Colo. Aug. 14, 2012) (same).

In the Central District of California, after Malibu Media refused to file Notices of Related Cases, the resulting assignment of cases to multiple Judges resulted in different judges reaching opposite conclusions on joinder. *Cf., Malibu Media v. Does 1-10,* C.D. Cal. Case No. 12-cv-1647, Dkt. No. 22, 6/4/2012 (finding that defendants were part of same swarm so joinder was proper); *with Malibu Media v. John Does 1-10*, C.D. Cal. Case No. 12-cv-3623-ODW-PJW, docket no. 7, 6/27/12, p. 6 (denying early discovery as to all Does other than Doe No. 1 and finding that "The loose proximity of the alleged

---

[13] When plaintiff's counsel filed her renewed motion for leave to issue subpoenas prior to a Rule 26(f) conference in the Central District of California, on August 15, 2012, and argued that, "In every BitTorrent infringement case in the District of Colorado, the court has ruled that joinder is proper," (p. 19) she was evidently unaware of the two cases, decided the day before, on August 14, 2012, where courts in the District of Colorado denied early discovery for all Does other than Doe No. 1.

**MEMORANDUM IN SUPPORT OF**
**JOHN DOES' MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1**

infringements (March 5, 2012–April 12, 2012) does not show that these Defendants participated in the same swarm.")[14]

**(d)     John Does Using BitTorrent Months Apart from One Another Are Not Part of the Same Transaction or Occurrence**

In all of the cases Malibu Media has filed in this District, there is a substantial temporal gap, generally of 2–3 months, between the time of the alleged infringing downloads. A review of Exhibit "A" or "C" to any of plaintiff's complaints bears this out. For example, in S.D. Cal. Case No. 12-cv-1135, John Doe No. 35 is alleged to have participated in a swarm transaction and downloaded 11 infringing works on 2/4/2012 at precisely 17:15:53. Over two months later, on 4/11/2012 at 07:52:59, John Doe No. 8 was supposedly participating in that same swarm transaction, when s/he downloaded 16 copyrighted works.  S.D. Cal. Case No. 12-cv-1135, Dkt. No. 1-3.

Simply put, Does who may have shared excerpts of the same file months apart from one another are not part of the "same series of transactions."  The time gap is simply too long.  As Judge Wright found in a detailed order addressing the technical characteristics of BitTorrent in one of Malibu Media's cases in the Central District of California,

> "The loose proximity of alleged infringements (March 5, 2012-April 12, 2012) does not show that these Defendants participated in the same swarm.  As discussed above, a downloader may log off at any time, including before receiving all the pieces of the copyrighted work. Without evidence that these Does acted in concert, joinder is improper—the Doe Defendants should be severed and dismissed under Federal Rule of Civil Procedure 21." *Malibu Media v. John Does 1-10*, C.D. Cal. Case No. 12-cv-3623-ODW-PJW, docket no. 7, 6/27/12, pp. 5–6; *see, e.g., fn 17, supra.*

---

[14] After all of Malibu Media's cases in the Central District of California were transferred to Judge Klausner, Judge Klausner vacated all prior orders authorizing early discovery,

**MEMORANDUM IN SUPPORT OF**
**JOHN DOES' MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1**

Any Court adopting an approach that allows the plaintiff to misjoin multiple Does prior to service, rather than the approach apparently preferred in the other Districts in California, New York, and Texas, is likely to become a destination forum for this kind of lawsuit.

At least one Court has gone so far as to hold that the "transactional relatedness" test is only satisfied in online download cases when parties are downloading a file *at the same time*. *DigiProtect USA Corp. v. Doe*, 2011 U.S. Dist. LEXIS 109464, 8-9 (S.D.N.Y. Sept. 26, 2011) (*for defendants to be part of same "swarm," a user must have "downloaded the movie from the same website during overlapping times" with another member of the swarm*); *see also Raw Films, Inc. v. Does 1-32*, 2011 WL 6840590, at *2 (N.D. Ga. Dec. 29, 2011) ("Downloading a work as part of a swarm does not constitute 'acting in concert' with one another, particularly when the transactions happen over a long period of time;" time span of 4 months); *Liberty Media Holdings, LLC*, 2011 WL 5190106, at *3 (S.D. Fla. Nov. 1, 2011) (same; *time span of two months*); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 2011 WL 5190048, at *2–4 (S.D. Fla. Nov. 1 2011) (same; *time span of two months*).  Here, plaintiff has not alleged that plaintiff's were downloading files *at the same time* so there really is no "swarm," and therefore no basis for "swarm joinder."

Plaintiff's complaint undermines its argument that the Does are part of the "same swarm" because the complaint shows that the Does did not download files at the same time, but rather downloaded files months apart from one another.   Joinder should be denied on this basis alone.

**(e)   John Does Who Download Different Movies Are Not Part of the Same Transaction or Occurrence**

A careful review of each "Exhibit C" to plaintiff's complaints also suggests that the various Does who are alleged to be part of the same swarm did not actually download *the same movies* as one another.  Most of the cases plaintiff has filed in this District involve allegations that Does downloaded multiple copyrighted works, supposedly by downloading a "siterip," or archive file, that contained multiple copyrighted movies owned by

**MEMORANDUM IN SUPPORT OF**
**JOHN DOES' MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1**

plaintiffs.[15]  However, the exact mix of movies downloaded by the Does varies from Doe to Doe, even within a single action, even for Does who are supposed to have downloaded the *exact same file*. Sticking with the example above, in 12-cv-1135, Doe No. 35 is alleged to have downloaded **11** of plaintiff's movies, per Exhibit C to the complaint.  By contrast, in that same action, while supposedly participating in the "same swarm" Doe No. 8 supposedly downloaded **16** copyrighted works, also per Exhibit C to the complaint.  S.D. Cal. Case No. 12-cv-1135, Dkt. No. 1-3.

This begs the question, if the Does were supposedly downloading the *exact same file*, as identified by cryptographic hash tag, as plaintiff's allege, then how did Does downloading the *exact same file* end up with *different movies*?  Since the crux of plaintiff's "swarm joinder" argument depends on the idea that "the alleged infringers all participated in the same exact swarm and downloaded the same exact copyrighted file," this discrepancy is no small matter.  Neither the plaintiff's renewed motion for early discovery in the Central District, nor the reply, nor the declaration of the Technical Expert, provide any explanation for how Does who were supposedly participating in the "same swarm" ended up downloading different copyrighted movies.

Even if the "swarm joinder" theory were good law, surely the fact that the Does are alleged to have downloaded ***different movies at different times*** would take such a theory too far afield.

Plaintiff has not alleged that any of the Does ***actually*** traded pieces of an infringing movie with any of the other Does.  Rather, plaintiff seeks to join the Does together on the suggestion that "each putative Defendant is a ***possible*** source for Plaintiff's copyrighted work."  P's Renewed Mtn. for Leave, at p. 9 (emphasis added).  Plaintiff argues that each Doe is "responsible for distributing the work to the other putative defendants, who are also using the same BitTorrent technology to copy the identical copyrighted material."  *Id.* However, as noted above, according to each Exhibit C to plaintiffs complaints, even Does

---

[15] There are a few exceptions, *i.e.*, cases before this Court where plaintiff has alleged infringement of a single copyrighted movie.

**MEMORANDUM IN SUPPORT OF**
**JOHN DOES' MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1**

who are supposedly part of the "same swarm" are alleged to have actually downloaded *different* copyrighted material.  Moreover, since plaintiff admits that each putative Defendant is only a "possible" source for a copyrighted movie, how can plaintiff then conclude that each putative Defendant is "responsible for distributing the work to the other putative defendants"—simply put, plaintiff has no idea if this is true or not.  As Judge Wright correctly noted, a BitTorrent user may disable the upload feature, which would cast further doubt on whether each Doe who had done so was really part of the "same transaction" with the other Does in a given "swarm." *Malibu Media v. John Does 1-10*, C.D. Cal. Case No. 12-cv-3623-ODW-PJW, Dkt. No. 7, 6/27/12.

**(f)     The Allegations that Defendants Downloaded Different Movies at Different Times Also Means that There Will be Different Questions of Both Law and Fact**

As noted above, the defendants are accused of downloading *different movies at different times*. Further, each of the individual Doe defendants in this cases is likely to present completely different factual circumstances, which result in a variety of different legal defenses.  *E.g. In re: Adult Film Cases*, at p. 20 (noting the "panoply" of different legal defenses raised by a "half-dozen moving defendants, even at this preliminary stage). Thus, even though there will admittedly be at least one common question of law or fact, on a macro level, the differences between the facts and legal claims applicable to a given Doe outweigh any potential similarities insofar as joinder is concerned.

**(g)     The Underlying Basis for Plaintiff's "Swarm Joinder" Theory is Not Sound**

Other than Judge Howell's decision in *Call of the Wild*, which is the leading case for the plaintiff's bar in this business, the other main case plaintiff focuses on is an order by Judge Randon of the Eastern District of Michigan in *Patrick Collins, Inc. v. John Does 1-21,* 2012 WL 1190840, at *4-5.  Judge Randon reasoned, "in the universe of possible transactions, at some point, each Defendant downloaded a piece of the Movie, which had

been transferred through a series of uploads and downloads from the Initial Seeder, through other users or directly, to each Defendant, and finally to IPP."[16]  *Id.*

With due respect to Judge Randon, the joinder standard he suggests, and upon which plaintiff seeks to rely, amounts to the Rule 20 equivalent of a game of  "Six Degrees of Kevin Bacon".[17]  The idea is that somehow, some way, through an ***indeterminate*** number of intermediary connections[18] to other peers, each of whom may or not be another Doe Defendant, each Doe Defendant can be linked back to the Initial Seeder (*i.e.*, Kevin Bacon).  And as a result of the fact that every Doe Defendant in the swarm may be linked to the Initial Seeder, it therefore follows that every Doe Defendant can somehow be linked to every other Doe Defendant.  This may be true as a matter of pure logic.  But as a practical standard by which to judge whether different individuals, with different factual circumstances, may properly be joined into the same lawsuit, it leaves much to be desired.

More importantly, while Judge Randon's theory of joinder, which involves an ***indefinite*** number of theoretical connections to join Does together, may meet the "logical relationship" test used by some Circuits, this kind of reasoning would not seem to qualify as the kind of "***very definite*** logical relationship,'" that is necessary to support joinder on this Circuit.  *Hubbard v. Hougland*, 2010 U.S. Dist. LEXIS 46184 (E.D. Cal. Apr. 5, 2010); *citing Bautista v. Los Angeles County*, 216 F.3d 837, 842-843 (9th Cir. 2000) (emphasis added).

Another one of the few 2012 cases plaintiff relies upon is predicated on an illusory distinction between BitTorrent and prior P2P services.  In *Liberty Media Holdings,* 2012 WL 628309, the plaintiff basically bamboozled the Court with technical jargon by arguing

---

[16] IPP is the name of the company that currently provides the services of plaintiff's technical expert, Tobias Fieser.

[17] http://en.wikipedia.org/wiki/Six_Degrees_of_Kevin_Bacon

[18] The number of connections could be any number greater than 0: a Defendant might have downloaded directly from the Initial Seeder (i.e., 1 connection), there might be a few people in between, none of whom are other Defendants, there might be an unbroken daisy-chain of Doe defendants leading to the Initial Seeder, or it might require hundreds, or even thousands, etc., of people to make the connection, each of whom may or not be another Doe defendant.

**MEMORANDUM IN SUPPORT OF**
**JOHN DOES' MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1**

that BitTorrent was different from prior P2P services, because in the world of BitTorrent, peers in a network share lots of little pieces of a file with lots of different people (a "swarming" or "multisource" download), as opposed to downloading a file from one person at a time.  Thus, the Court there wrongly found that the use of swarming, multisource downloads "distinguished BitTorrent cases from the earlier P2P cases.  Given this unique theory of copyright infringement, it is possible that BitTorrent users identified with the alleged illegal sharing *of the same file* are 'logically related' and 'acting in concert.'"  In reality, prior file sharing protocols like Kazaa, eDonkey, and various Gnutella clients (*e.g.*, Limewire) have all incorporated multisource/swarming downloads since 2002.  Prior cases denying joinder for Does using those services should not be distinguished on this basis.

**(h)     Plaintiffs Mere Allegations of Joint and Several Liability Do Not Make Joinder Permissible and Do Not Prohibit the Court from Severing the Does**

Plaintiff posits that by merely including an allegation in any complaint that defendants are jointly and severally liable, a plaintiff may, *ipso facto*, divest the Court of its discretion to sever defendants from a case.  Plaintiff reasons that "any holding that joinder is not permitted. . .would effectively summarily adjudicate Plaintiff's claim for contributory infringement," but that such a holding "would be erroneous because contributory infringement is 'a question of fact for trial.'" C.D. Cal. Case No. 12-cv-3614 Dkt. No. 30. This bit of sophistry ignores the Court's inherent discretion to adjudicate issues such as joinder: the statute says the Court *may* permit joinder, and the Court therefore has inherent discretion to sever defendants.  *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521-522 (5th Cir. 2010).

**(i)     The Does Will be Materially Prejudiced if the Court Denies Severance**

Other than as echoed in the briefs of mass copyright infringement plaintiffs across the country, Judge Howell is essentially on her own in suggesting that "[j]oinder in a single case . . .in fact, is beneficial to the putative defendants." *Call of the Wild, supra,* at 344.

**MEMORANDUM IN SUPPORT OF**
**JOHN DOES' MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1**

In reality, the undersigned can attest that every time a court allows a plaintiff to mis-join multiple Does into a single case, and a plaintiff begins seeking subscriber information from the ISPs, the result is a substantial and appreciable burden on the putative Does.  As soon as a Court allows early discovery as to multiple, mis-joined Does, then, shortly thereafter, ISP subscribers, many of whom did not download plaintiff's pornographic movies, are faced with the expense of engaging counsel or taking a big chance with their reputations.  Plaintiff argues that since defendants "are not named parties. . .they are not required to respond to plaintiff's allegations or assert a defense."  However, this cynical argument ignores the heart of plaintiff's entire business model: if the putative Does do nothing, their names will likely be turned over to the plaintiffs.  At that point, generally, the harassing phone calls from plaintiff's "settlement negotiators" begin, and the ball is entirely in the plaintiff's court as to whether it will choose drag peoples good names through the mud by "naming" them in a lawsuit accusing them of illegally downloading pornography.  Meanwhile, the plaintiff can be counted on to demand "settlements" and dance around the issue of whether it really plans to name and serve anyone, or whether doing so based on nothing more than ISP billing information, would violate Rule 11.

Further, why should any Doe have to wait to prepare his or her defense while the Court adjudicates the issues of other Does?  As far as judicial economy is concerned, any advantage achieved by joinder can similarly be achieved through ordering the plaintiff to file cases one at a time, but comply with the Notice of Related Case rule, and then consolidating the individual cases together for pre-complaint discovery, or according to some other sensible plan.  In the unlikely event one of these cases ever reaches the merits, the Court could, of course, later choose to consolidate certain issues for trial.

**(j)      The So-Called "Policy" Reasons the Plaintiff Relies Upon to Justify Joinder Also Miss the Mark**

Plaintiff advances two policy reasons that supposedly advance joinder, both of which only underscore why the Does are impermissibly joined. First, plaintiff worries that many ISPs delete IP addresses after a certain number of weeks. Second, plaintiff cites to

**MEMORANDUM IN SUPPORT OF**
**JOHN DOES' MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1**

Rule 1, and laments that having to file individual lawsuits, one at a time, would be more expensive, because it would require paying more in filing fees.

Here, the first of these concerns, the idea that the ISPs will delete user information, is completely unfounded. The ISPs are already on notice of the lawsuits already filed here, and the Court can simply order the ISPs not to delete anything for a while.

What plaintiff really seems to be getting at though is the notion that filing lawsuits against Doe defendants individually, one at a time, will be more expensive for the plaintiffs. "Unless the Court system allows Plaintiff to dilute the problem[19] through joined cases, this phenomenon will needlessly increase the cost associated with pursuing infringement cases." C.D. Cal. Case No. 12-cv-3614 Dkt. No. 30.

It may very well be that filing lawsuits against Doe defendants individually, one at a time, for BitTorrent copyright infringement, is no longer a cost effective business model, after the increase of filing fees is factored in. If so, the plaintiff should petition the legislature to update the Copyright Act to keep up with BitTorrent. Seeking to extend the Rules of Civil Procedure in a way that essentially creates a heretofore unknown form of reverse class action, and taxing the federal courts with a "blizzard" of mass infringement lawsuits, does not seem like an appropriate solution to this copyright owner's quandary.

As noted by Judge Gary Brown, "in its argument, plaintiff neglects to observe that Rule 1 requires that disputes should be resolved in a manner that is '**just**, speedy and inexpensive.' Fed. R. Civ. P. 1 (emphasis added [by Judge Brown])." *In re: Adult Film Cases*, *supra,* at p. 16. Judge Brown added further, that

> "Our federal court system provides litigants with some of the finest tools available to assist in resolving disputes; the courts should not, however, permit those tools to be used as a bludgeon. As one court advised Patrick Collins Inc. in an earlier case, "while the courts favor settlements, filing one mass

---

[19] The "problem" of ISPs deleting user data? It seems like plaintiff really means the "problem" of paying filing fees.

action in order to identify hundreds of doe defendants through pre-service discovery and facilitate mass settlement, is not what the joinder rules were established for." *Patrick Collins, Inc. v. Does 1–3757*, 2011 U.S. Dist. LEXIS 128029, at *6–7 (N.D. Cal. Nov. 4, 2011)." *Id.* at p. 17.

In sum, if anything, policy considerations militate in favor of protecting the innocent ISP subscribers being forced to retain counsel so as to avoid plaintiff's threats that unless they pay thousands of dollars, plaintiff will publicly shame them as people who watch pornography.

## IV.  EVEN IF JOINDER WERE PERMISSIBLE, THE COURT SHOULD STILL EXERCISE ITS DISCRETION AND SEVER THE DOES IN LIGHT OF PLAINTIFF'S ABUSIVE LITIGATION TACTICS AND  BURDEN ON DOES

Malibu Media has a long track record of abusive litigation tactics, both in other cases it has filed nationally, as well as in the specific actions taken by its counsel here, in the cases now pending before this Court.  Specifically, the plaintiff: (i) is using the same "settlement negotiators" as other notorious copyright trolls; (ii) using subpoena information to collect on claims that go beyond the complaint;[20] (iii) willfully violating courts' notice of related case rules to try and fly under the radar; (iv) seeking John Doe phone numbers and email addresses despite a court order telling Malibu Media not to do so anymore; (v) misrepresenting the range of potential damages.  Dec'l. of Morgan E. Pietz, ¶¶ 6–26.

Judge Brown's May 1, 2012, order and recommendation in *In re: Adult Film Cases*—which specifically addressed Malibu Media cases, among others—was fairly devastating to Malibu Media's business model, so Malibu Media essentially ignored it and carried on with business as usual.  As Judge Brown noted on July 31, 2012, "Less than three months after addressing concerns about potentially abusive litigation tactics by

---

[20] This tactic, which Ms. Leemore Kushner, who represents Malibu Media, as well as Patrick Collins, Inc., in several districts in California, has repeated on several occasions, is particularly troubling, *see* Dec'l of Morgan E. Pietz ¶¶ 14–19.

**MEMORANDUM IN SUPPORT OF**
**JOHN DOES' MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1**

plaintiffs in these actions, this Court is *again* confronted with indicia of improper conduct by plaintiffs' counsel, to wit: plaintiffs' counsel apparently ignored, or tried to circumvent, the very safeguards the undersigned put in place to help prevent unfair litigation tactics while permitting plaintiffs to pursue their claims." *In re: BitTorrent Adult Film Copyright Infringement Cases,* E.D.N.Y. Case No. 12-cv-1147-JS-GRB, Dkt. No. 9, 7/31/12 (*In re: Adult Film Cases II*) (emphasis in original). Specifically, in *In re: Adult Film Cases I*, after severing all Does other than Doe No. 1, Judge Brown ordered that any ISP subscriber information *for Doe No. 1* be produced directly to the Court, not to plaintiff's counsel. **Counsel for Malibu Media**, Aaron Kotzker, then went ahead and issued a subpoena for Doe No. 1, directing the information to be produced to the offices of counsel for Malibu Media; essentially ignoring this aspect of the Court's order. Thus, in *In re: Adult Film Cases II,* Judge Brown explained

> "This Court's Order cataloged abuses tactics by plaintiffs in related actions against John Doe defendants, and expressed, in no uncertain terms, this Court's concerns about the conduct of this litigation going forward, particularly in light of the serious questions about plaintiffs ability to properly identify defendants based solely upon their IP addresses. ***As such, it is astonishing that counsel failed to observe the precautions established in the Order. On this record, it is difficult to ascertain whether this apparent failure was deliberate, or simply the result of gross inattention***." *In re: Adult Film Cases II,* at p. 5.

For all of the reasons noted above, including Malibu Media's "abusive litigation tactics," as detailed in the Declaration of Morgan E. Pietz, the Court should exercise its discretion and sever the Does, even if it finds joinder permissible. *See Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521-522 (5th Cir. 2010) (internal citations omitted) (court has discretion to deny permissive joinder even when test is met); *Next Phase Distrib., Inc. v. Does 1-27*, 2012 U.S. Dist. LEXIS 107648, 11-12 (S.D.N.Y. July

31, 2012) (addressing split in authority, but severing Does as a matter of the Court's discretion for the reasons set forth in *In re: Adult Film Cases*); *Next Phase Distribution*, 2012 WL 3117182, at *4-5; *SBO Pictures, Inc. v. Does 1-20*, No. 12 Civ. 3925 (SAS), 2012 WL 2304253, (S.D.N.Y. June 18, 2012) at *2; *see also Hard Drive Prods., Inc. v. Does 1-188*, 809 F. Supp. 2d 1150, 1164 (N.D. Cal. 2011).

There is also one more excellent reason for the Court to exercise its discretion and sever the Does: *filing fees*. The *In re: Adult Film Cases* court recently noted that it appeared that just in that district alone, three plaintiffs had avoided paying over $100,000 in filing fees. "If the reported estimates that hundreds of thousands of [John Doe] defendants [in mass infringement cases] have been sued nationwide, plaintiffs in similar actions may be evading millions of dollars in filing fees annually. Nationwide, these plaintiffs have availed themselves of the resources of the court system on a scale rarely seen. It seems improper that they should profit without paying statutorily required fees." *In re: Adult Film Cases, supra*, p. 23.

Here, the same is also true. Based on the undersigned's calculations, so far in 2012, as of August 14, 2012, in the State of California alone, Malibu Media had sued 867 Does in 61 cases. Thus, assuming a $350 filing fee per case, instead of paying $303,450 in filing fees to the Courts to sue each of those people individually, Malibu Media has paid only $21,350, resulting in a net loss to the Judicial Branch *in California alone* of $282,100. Nationwide, by repeatedly mis-joining approximately 4,646 Does in only 287 actions (as of August 14, 2012) it would appear that *Malibu Media has cheated the Federal Judiciary out of a staggering $1,372,700.00 in filing fees. See* Dec'l. of Morgan E. Pietz, ¶ 26, Exhibit A.

## V.  CONCLUSION

For all of the foregoing reasons, the Moving Parties respectfully request that the Court sever all Does other than Doe No. 1 in this action, and in each related action filed by Malibu Media currently pending before this Court. The Moving Parties also request that all outstanding subpoenas be quashed for the severed Does.

Respectfully submitted,

DATED: September 13, 2012

  _/s/ Morgan E. Pietz_____

Morgan E. Pietz (Cal. Bar No. 260629)
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone:   (310) 424-5557
Facsimile:    (310) 546-5301

Attorney for:

       Putative John Doe No. B in Case No. 3:12-cv-1054
       Putative John Doe No. C in Case No. 3:12-cv-1054
       Putative John Doe No. D in Case No. 3:12-cv-1135
       Putative John Doe No. E in Case No. 3:12-cv-1135
       Putative John Doe No. F in Case No. 3:12-cv-1354
       Putative John Doe No. G in Case No. 3:12-cv-1356
       Putative John Doe No. I in Case No. 3:12-cv-1370

**MEMORANDUM IN SUPPORT OF**
**JOHN DOES' MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1**

1

2
## CERTIFICATE OF SERVICE

3
        I hereby certify that on September 18, 2012, the above document was submitted to

4
the CM/ECF system, which sent notification of such filing(s) to the plaintiff Malibu Media,

5
LLC, which is registered for electronic service.

6
        Check if Applicable:

7
        [  ]    Copies of these documents were also served via U.S. Mail, on this date, to

8
the following parties, who are not registered for electronic service:

9
                N/A

10

11
DATED: September 18, 2012                THE PIETZ LAW FIRM

12
                                         */s/ Morgan E. Pietz*

13
                                         Morgan E. Pietz
                                         THE PIETZ LAW FIRM

14
                                         Attorney for Putative John Doe(s)

15
                                         E-mail: mpietz@pietzlawfirm.com

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM IN SUPPORT OF**
**JOHN DOES' MOTION FOR SEVERANCE OF ALL DOES OTHER THAN DOE NO. 1**